How do I pronounce your last name? I am Edward Lebreton, counsel for the appellant, which is commonly known as AICSA. I want to first just take a minute to talk about the facts of this case. The EPC contract, the construction contract that underlies all of this, contain only one requirement for furnishing a bond. And you know, my client is a leading company in Guatemala. They furnish the bonds with no doubt of disagreement about that. They fulfill their obligation to furnish the bonds. You know, for whatever reason, Santa Rita did not make a timely claim on the bonds and the arbitrators were very slow in their proceeding. And to make up for this, the arbitrators just invented this requirement for a second bond. There's nothing in the contract at all that would raise an issue about issuing a second bond. It's going to, it would cost my client substantial money for counter security. So this action is well beyond the powers of the arbitrators. And this case should be remanded to the district court to decide under section 10A4 whether they exceeded the powers. But now, there are three topics I'd like to discuss, the legal reasons why this case should be remanded. The first one involves the 28J letter that we sent earlier this week. We believe the Supreme Court's decision last month in General Electric overrules, you know, parts of the 11th Circuit precedent. Second one is an argument that existed before GE, which is we think that the 11th Circuit precedents can be distinguished from this case. And the third topic would be why it is that the Convention Section 5.1.E incorporates domestic law, including the FAA domestic law. So to go to the GE case, the issue was whether equitable estoppel could be used by a party that did not sign the arbitration agreement to enforce it. When the case was before this court, what this court did was look at the convention and said in the convention, it only talks about arbitration agreements in writing. And therefore, this court said, well, equitable estoppel is not allowed, and they refused to enforce the agreement. The Supreme Court reversed. And the point is that the Supreme Court has turned the analysis around the other way. Under the FAA, there's two chapters. Chapter 1 is the domestic law. Chapter 2 incorporates the Convention on Enforcement of Foreign Arbitral Awards. And Section 208 says that Chapter 1 is incorporated into Chapter 2 to the extent that it doesn't conflict. All right. And so instead of just looking what is written in the convention, what the Supreme Court asked is whether the provision from the domestic law that allowed equitable estoppel conflicted with the convention. It read the convention and said, well, we don't see anything in the convention that says that arbitration agreements are enforced only if they're in writing. So therefore, equitable estoppel can be applied and there's no conflict. So what the rationale that the Supreme Court is telling you to take is to look at the basis for the rule from the domestic statutes and ask, does it conflict with the convention? And if it doesn't conflict, then you enforce it. I mean, the most important line in that decision is where it says that the convention was drafted against the backdrop of domestic law and that it would be unnatural, was the court's word, to displace domestic law if there was no conflict. So that's one of the arguments that you think allow us to not follow industrial risk. Yes. And just to be very quick, so when you look at that was a case enforcing an arbitration agreement. This is a case about vacating an arbitration agreement. But the convention is not exclusive for vacating arbitration awards. So following Section 208 and GE, you would supplement with the domestic law. That's, as Your Honor pointed out, that's one reason we're here. The second reason... So you're essentially, the argument on that ground is essentially that that decision from the Supreme Court essentially abrogated to the point of overruling industrial risk. Well, it shows you that the analysis that comes from industrial risk has to be changed. Actually, I think Your Honor's four corners of the facts, industrial risk is correct. But it's telling you that, you know, what you need to be doing is looking at whether the provision of the domestic law being incorporated into the convention conflicts.  Not the question that previously was asked, which was just, is that listed in the convention? The court, the 11th Circuit previously would only just look at a convention and say, is it listed there? And if the answer was no, say, well, then you can't argue. And so the Supreme Court, I mean, it is in fact overruling the rationale of those cases. I'd like to talk about why industrial risk can be distinguished. It's both overruled partially, but it was also distinguishable. And the reason that and the other cases distinguishable is no 11th Circuit case has addressed the section of the convention, 5.1.e, that states an award can be set aside by competent authority in the country where the award was made or the seat of the arbitration. And so industrial risk, the issue was whether there was certain misbehavior to do with experts. And it was just a general objection. And the court, after determining that the convention applied, looked and said, well, maybe it's 5.a.b. or maybe it's 5.2, and then said it wasn't proved. And then just said the grounds for vacating the award have to be enumerated in the convention. Seven grounds. The fifth of the seven grounds is 5.1.e, that it can be set aside by competent authority at the seat of the arbitration. So it's consistent with industrial risk to look at 5.1.e. And all the other circuits have said that what that does is incorporate domestic law. I also have a new case somewhere here that shows that this is what the other circuits have held. It's Gold Group, a Tenth Circuit case, 994, Fed Third, 1181, 1189. But there would be no purpose in this provision that refers to the competent authority to see the arbitration if that was not also to allow the application of the domestic law of the country's seat of the arbitration. That country has what is referred to as primary jurisdiction. It's intended, it has greater powers to vacate awards. This is, I'm talking now about distinguishing industrial risk, but it's all consistent with G.E. where the court said that you would expect domestic law to be applied unless it conflicts with the convention. So you think there's a way to read, in addition to your argument about G.E. itself, you think there's a way to read industrial risk as allowing vacator grounds under Section 10? Yes. And, I mean, the following case in Versiones considered this, said that the intervening Supreme Court case in B.G. Group did not directly overrule industrial risk. But what it did next was it made an analysis under 10a.4 and said, well, you didn't prove that they exceeded the powers. So the actual holding is, assuming industrial risk is overruled, it would still lose. And the same thing for earth science. So therefore, you know, the 11 certain cases do not directly conflict with our request here to use 5.1.e to incorporate the rule of overturning or vacating arbitration awards that exceed their powers. And the court should remand this to the district court to make that determination, which it did not address at all. All right. Thank you, Mr. Lebreton. You've saved your five minutes for rebuttal. Thanks. Do you want to take your microphone cover? Oh. I apologize. These are the phones we have. Thank you very much. Thank you. It takes a little bit of practice there. Good morning. Mr. Bianchi, good morning. Good morning. May it please the court. Jaime Bianchi on behalf of the Council for the Appellee. Hidroelectrica Santa Rita. I'll just refer to it as Santa Rita. Before I get into the argument, I think a few things need to be clarified with respect to the supplemental authority that was filed. It's cited as having occurred earlier this year. In fact, it occurred in 2020. So this decision predates the most recent decision, unreported as it may be out of the 11th Circuit, in Earth Science, the Supreme Court case in GE. So, obviously, the GE case predates the latest word out of the circuit with respect to the enforceability of Article V, and Article V being the solely enumerated grounds upon which an international arbitral award rendered in the United States could be challenged. I think it's also important, when you look at the GE case, what is Supreme Court Justice Thomas writing about? Specifically, he's writing about Article III of the New York Convention. He is not writing about Article V. And Article III is all about formation, whether or not there was an agreement to arbitrate, not grounds upon which to overdo it. And specifically, he finds that Article Roman numeral III contains no exclusory language, and then Article III contemplates the use of domestic doctrines. It does not speak of Article V, which is obviously the holdings of this circuit, starting with industrial risk back 20 years ago, followed by inversiones, followed by Earth Science. So we're asking ourselves, well, what does Article V say? Well, Article V, unlike Article III, does include exclusory language. It says, specifically, recognition and enforcement of award may be refused at the request of a party whom it is invoked, here's the key words, only if. That's language in Article V. That is the language that this Court has been focused on for the last 20 years. And it spells out seven enumerated grounds. And it says only if one of those five factors is included. Article V was never argued by the appellant below. None of the grounds that are being articulated in Article V have ever been used by either before the magistrate judge, before the district court judge, or even in the briefs here today. And in fact, if one were to even look at Article V, the whole argument that's being made is that somehow the arbitral panel, in its wisdom of 80 pages worth of an award, 18 pages worth of an addendum and award, basically went off the rails and exceeded its authority. If the Court were to look, subpart Roman numeral I.C. specifically says that an award that deals with a difference not contemplated by or not falling within the terms of submission to the arbitration or containing decisions beyond the scope of the submission arbitrations could be grounds under Article V to challenge. That's an argument that's been waived. It's never been made, ever here. Instead, we're told, forget about industrial risk and its holdings. Finding that, I mean, the convention enumeration of defenses is exclusive. Also in inversiones, where it says defenses enumerated in the convention provide the exclusive grounds for vacating an award subject to the convention. And in earth sciences, again, an unreported decision saying the convention does not recognize subsection 10A4, which is the Domestic Arbitration Act provision, as a basis for refusing the enforcement of an award. So we're told, forget about all of that. There was a grounding to at least challenge the issue if you really believe that the arbitral panel went off the rails, exceeded its jurisdiction under the convention language in Subpart V. But that argument's been foreclosed, never raised, never briefed before anyone. As a matter of first principles, did industrial risk get it right in the way that it read Section 207? I believe it did. Section 207 only talks about confirmation of an award? Well, the question does speak of confirmation, but it has to have gotten it right in this regard. Obviously, this is the only mechanism that exists, right? Under the FAA, both under Article I and II, the removal provisions allow for the jurisdiction. So I believe it did get it right. It got it right there. And if you get to more of the substantive point, if I can, Judge Jordan, the whole idea of having an international treaty for the recognition of international awards is that essentially you're going to standardize it around the world, whoever's a signatory to the treaty. If you basically say, under a provision on its face, on its language, when you read IA, it speaks more of a timing issue, a mootness issue. You're going to basically bring in all of your domestic arbitration act, all of your domestic arbitration law. What's the purpose of having an international treaty standardizing anything? Well, but then what's the purpose of choosing the arbitral forum? You think people don't choose it because each side? Well, sometimes it's chosen because of who's got the cards, who's got the leverage. But otherwise, you don't think if people have a choice that they sort of try to figure out the same way that people legally forum shop in federal courts where they might get a better sounding for their arguments? True, but let me say this. Yes, there would be arguments. I'm not going to say that's not part of the analysis, but what do people look at? When people draft these provisions, they look at whether people are signatories to the New York Convention. You're not going to pick a country that isn't a signatory. You're not going to pick a country that has a history of bringing in domestic law to challenge arbitrations because basically, as this court has aptly pointed out, the whole idea of doing this is you do it once. You don't get to do mulligans. There's no do-overs. The whole idea is you're going to go, you're going to do your arbitration, you've picked your forum, you've picked your supposed trial experts who are going to decide your dispute, and you want to make sure once you've made that enormous investment of time and energy, it's going to get enforced. So the whole idea that you're basically... I understand the laws of other circuits, but we're here at the 11th Circuit, right? And this is not a new issue that's come before this. I mean, you're seemingly getting them almost on a yearly basis. It's happening a lot, and it's picked because it is a place where everyone understands that the review is limited, and it's limited to seven elements. And that's the purpose behind it. That might be convenient, but it doesn't mean that it's right. Well, I would say this. I believe it would be right because when you look at the language, if you look at BG and the citation that it... the little one dicta line that it raises on this issue, it even drops the beginning of one... the beginning of Section 1E. When you read 1E on its faces, the award has yet not become binding on the parties or has been set aside or suspended by competent authority. Okay, so it's like you can move to recognize it unless the place where it's been rendered has already disallowed it. Because as you would imagine, right, we talked about primary and secondary jurisdictions, but let's say... let's get beyond that. Let's say you want to enforce it in the British Virgin Islands where the money is, right, where the bank accounts are. So you want to make sure that if you're enforcing it in the British Virgin Islands and it has not been challenged in the U.S. and it's been revoked, then you can't use it. That's the purpose behind this provision. It's not to incorporate the substantive law of the United States on domestic arbitrations. If that were the case, it would be clearer on that point. Now... Well, all the other... I don't want to belabor because I want to let you get to the rest of your arguments, but the majority of other circuits and commentators disagree with that rationale. Well, I would say, yes, they would disagree, but none of it grounded in the language. And we know that the Supreme Court says that at the end of the day, when you deal with a treaty, you're dealing with the language of the treaty. So we should do justice to the language of the treaty. That's what I would say. I would say I get the expediency. I get the... We're used to dealing with, you know, the elements of Rule 10A4, and it's comfortable. I get all that. But I'm saying, look at the language. And when you look at the language, industrial risk is right, inversiones is right, and so is earth science. And the other part of my argument that I would turn to, and I know my time's running out, is, look, even as earth science did properly and was done and you could do it, what are the four issues they're talking about? First one is, there's, I mean, they're basically, there's no dispute when you look at these opinions, these orders, that arguments were made under the contracts, the engineering procurement construction contract, number one. Two, there was, the panel took evidence on all of these issues. There's no argument that there was no evidence provided. In fact, whole sections of the briefs that were done to the arbitrable panel were put into this case. And third, the panel used its, you know, weighing the evidence, listening to Guatemalan law, which is a substantive law of the case, came to the decisions. So what are the issues? The bonds, the famous advance bonds that my client put money forward and they were supposed to be protected by bonds. All the panel has done, and it's very clear what it did in paragraph 61 of the addendum. It says, grounding in the contract and the evidence, all that it requires is that ICSA maintain the bonds. What's the purpose of having a surety bond that lapses if you're the owner? All it's doing is preserving the relief that the parties had contractually negotiated for from the very beginning in the deal. The second grounds that are being done is that there was a misjoinder of a subcontractor. When you read the order, the panel goes through excruciating depths, you know, looking at both sets of contracts, seeing, in fact, whether a direct action can be filed by the subcontractor bringing in the owner. And the answer was no. Again, an issue where total evidence was taken, analysis was done. No court's going to re-weigh all of the judicial decisions. Or you even have to agree with them, but they were all looked at based on evidence. The third issue is that anti-corruption provision. And there, specifically, on the addendum, the court basically says that in paragraph 46 of the addendum, the tribunal explained that it considered all of the evidence in the record, including the testimony of the witnesses, which again are being used in the case here, saying, and on the basis of the evidence concluded that there was no bribe paid. Again, you're being asked to re-weigh those issues. The fourth arguments are really no better. It's like a compound argument that lost profits are required under Guatemalan law. Well, they took expert testimony from the Supreme Court justices of Guatemala on the issue. And they made their conclusion. And somehow the court here is going to re-evaluate all that again? Again, the other point about it has to do about awarding fees and costs. And again, weighing the 32.3 and also applying the articles 37.4 of the ICC rules, it concluded that there was no prevailing party. Essentially, it was a split result. And they awarded no fees. But again, a judge is going to re-weigh all this evidence again and decide under the ICC rules about who's going to be the prevailing party?  jump the gun and go to the 10B4 factors, nothing that's identified You're assuming that the review is plenary and de novo without anything else because and I know that there are different arbitral acts and different conventions, so I know generalization is a danger. But you don't always get searing de novo review when you are conducting an analysis as to an arbitration award. And in fact, you wouldn't at all here. I mean, the standard is, as the court knows, if this were a domestic arbitration, let me just make sure there's no confusion in what I'm saying, let's assume we're doing a domestic 10A4 review. If that's what we were doing, I mean, the test is whether okay, so under 10A4, the Supreme Court has said we interpret 10A4 language narrowly, very narrowly. Arbitrators do not exceed their powers when they make errors, even serious errors. So it's not a matter of plenary, it's a matter of like you're just basically checking, is there evidence introduced, did the party submit this to the issue, is it grounded in the contract, and that's it. And the evidence was weighed. There is no no delving into the evidence, there's no delving into disagreements about whether you would agree that the bribe was paid or not, whether or not lost profits is recoverable under Guatemalan law or not, all those issues are out the door. Think about the only case that they've ever that they cite for this issue of industrial justice where a 10B4 challenge has been upheld, they cite to Stolt-Nielsen, and that was a case where the issue about whether or not there would be class arbitration was specifically done to the arbitrators, and there was a stipulation saying the fact that we're allowing the arbitrators to decide this is not an agreement that is properly before the arbitrators. So the whole notion that there is going to be industrial justice under 10A4, they can't even cite you one case of what was one that Stolt-Nielsen with that exception, but I mean they're asking for essentially a mulligan, and we were playing golf I have a bad back so I can't play golf, but I mean it's like a do-over. You don't get to do a do-over even under 10A4, and I see that my time's run out. Thank you. I think you know where I want to go. Thank you Mr. Bianchi. Mr. LeBreton, you've got your time left for rebuttal. I didn't practice microphone before I came up here. I want to address the article in the convention that we've been discussing 5.1E. I mean Senator Reid's argument follow the convention, but they keep overlooking the fact that this is part of the convention. They say there are only seven grounds for vacating an arbitration award. This is one of the seven, and no 11th case has addressed this article and told us what the meaning and effect of those words are. They mean something. They add something that's not in the preceding 5.1A to D. So the basis for incorporation of domestic law is there in the convention. In the convention, countries gave up some sovereignty to the convention, but there was a balance and the courts just told us it was made against the backdrop of domestic law. The B and G group Supreme Court case which the Indian Court said did not overrule industrial risk. Nevertheless, that was a challenge in the convention case using 10A4 and the Supreme Court followed that analysis. They just said at the end of the day that in that particular circumstance whether it was arbitration is decided by the arbitrators and therefore there was not excessive powers. If you want to follow the rule read and apply the convention you've got to address 5.1E which has not done and that is why these cases are distinguishable. Your Honor mentioned that parties are aware of where the arbitration is going to take place when they set their arbitration costs and that is for good reason because the seat of the arbitration will have primary jurisdiction so where you choose to arbitrate has effect and the suggestion that we're ruining the uniformity of arbitration around the world by applying domestic law of the United States is wrong because it's consistent with the convention because the convention recognizes that the seat of the arbitration will have additional powers that another country that is not the seat of the arbitration and is just enforcing the award does not have as much latitude to decide whether or not to enforce the award or whether to vacate it. It will lead to a lack of uniformity though, right? Necessarily so. You can't apply any bit of domestic law without having some lack of uniformity from country to country. But the convention is uniform for what the convention says and it's not uniform for what it doesn't say and what it allows to be supplemented by the domestic law of the country that you happen to be in. That's the way it was drawn. If it wanted no possibility under any circumstance of domestic law, you wouldn't have 5-1-E in the convention. Primary jurisdiction has consequences. Council talked about the evidence that in this case the arbitrators did in fact exceed their powers. The district court didn't reach that. What we're requesting is a remand. In fact, there was a motion to put in additional exhibits in support of Ike's position and what the magistrate judge said was, well, since I'm going to rule that they haven't stated a cause, I don't have to deal with whether or not I should admit these additional exhibits. So the record in the district court is not even complete. The district court should decide whether there's sufficient evidence to prove a breach of 10-8-4. We recognize that the arbitrators getting it wrong is not a ground for vacating. But arbitrators exceeding their powers is. Their power comes from the contract. If they did something that the contract doesn't contemplate, they've exceeded their powers. There's 10-4-8 cases that say that and that's what happened here when they invented this second violent crime. All right. Thank you both very much. Our last case this morning is number 20-14044 Brandi McKay versus Miami-Dade County.